PORTER *vs.* THE STATE OF GEORGIA.

1. The uncorroborated testimony of an accomplice is sufficient to convict of a misdemeanor.
2. Where a presentment charged a larceny from the house in stealing from the court-house of the county certain property belonging to such county, the venue being laid in Habersham county, and the evidence went to show that the defendant took part in the larceny, and that he was staying in the town where the trial took place (the county site of Habersham county), and in his statement he said that he was in that town, and was there on the night when the crime was done, after supper, and did not leave town during that night, there was sufficient proof of the venue to uphold a conviction.
3. Where the evidence showed the time when a change occurred in the holders of certain county offices, and that the stealing of certain books, papers, etc., was rendered necessary to hide the crimes of the ordinary while in office, and that when his successor went into office, he found the stolen property missing, this was sufficient to fix the time of the commission of the offense, and these occurrences having been within two years prior to the indictment or presentment, a verdict of guilty was not contrary to law or the evidence, on the ground that it was not shown that the crime was committed within two years prior to the finding of the presentment.
April 20, 1886.

Criminal Law. Accomplice. Venue. Verdict. Before Judge LUMPKIN. Habersham Superior Court. September Term, 1885.

Reported in the decision.

Barrow & Thomas; C. H. Sutton; Crane & Jones; E. K. Lumpkin, for plaintiff in error.

W. S. Erwin, solicitor general, by Frank L. Haralson; S. C. Dunlap; Claud Estes, for the state.

JACKSON, Chief Justice.

Porter, the plaintiff in error, was indicted for larceny from the house. He was convicted of a misdemeanor, the jury finding that the things stolen were worth less than fifty dollars. He made a motion for a new trial, on the ground that the verdict was contrary to the evidence and against law, which was overruled, and he excepted. Three reasons are given in argument why it is so: first, because the witness against him is an accomplice, and he is not corroborated; secondly, because the offense is not shown to have been committed within two years; and thirdly, because it is not shown to have been committed in the county of Habersham.

1. The uncorroborated testimony of an accomplice is sufficient to convict of misdemeanors. Code, §3755. *Parsons vs. The State*, 43 *Ga.*, 197; *Crisson vs. The State*, 51 *Ga.*, 597.

2. In finding him guilty, the jury found that the crime was committed in the county of Habersham, that being alleged as the venue in the indictment. Is there any evidence to support the finding? If so, however slight, it is ample, because there is none at all that the crime was committed anywhere else. In his statement, Porter says: "I was at work on the jail here in this place." What place? Of course the place where the case was being tried, which is Clarkesville, the county site of Habersham, and this court will officially know that this case was tried there, and that Clarkesville is the place where the court sits for Habersham county. "That night after supper," he goes on to say in the statement, "James Roberts says to me, 'Let's go up and see Mr. Groves.' I says, 'All right, for I want to see Alfred Mc—, who lived in the house adjoining Mr. Groves; we went, and I says, 'Now, when you get ready to go home, just holler for me.' After awhile he comes to the gate and hollered, and we went on together. I did not go out in town any more that night, but went

home with Roberts and slept together that night. As well as I remember it, when we went it was ten minutes after nine o'clock when we went to bed. Why Ben Martin" (the accomplice-witness) "has taken the turn he has to shove it on me, I don't know."

"That night," means the night of the crime; the state-ment sets up the *alibi* that night. Where? "Here in this place where I was at work on the jail," is the defend-ant's answer, and that answer fixes the venue of the crime.

So W. J. Fuller, in reply to Mr. Barrow's question, "And Mr. Porter was working here in this town?" answered, "Yes, sir; I reckon he was; he was staying up here." What here—what town? Of course, Clarkesville, the county site of Habersham county. So again Mr. Barrow asked, "Ben lived here in town?" and Fuller answered, "Yes, sir;" and then he proves by Fuller that "Ben," or Mr. Martin, Ben Martin, the accomplice-witness, was in the habit of associating with young men in town, with the view of explaining the fact that Porter and Martin were together in town that night.

The doctrine of slight evidence for the venue in Haber-sham being sufficient is not needed:—it is absolutely cer-tain, and I am glad it is, for if the solicitor general, and three counsel besides, I believe, had let a criminal escape when a single little question would prove the venue, it would shock the moral sense.

3. Is there any evidence to show that the crime was committed within two years from the date of the present-ment at March term, 1885, of Habersham superior court, so as to uphold the verdict to that effect?

Hill swore that he was sworn in on the 22d of January of last year—that is, 1884, which is within two years of March, 1885. When he went in, he found these stolen things missing, including the county seal. He succeeded Groves, as ordinary, who was obliged to have a seal for every-day use, and who, according to the evidence of Mar-tin, the accomplice-witness, got up the theft and induced

him and Porter to do the deed. When was it done? Just before he had to quit the office. Why? To hide his crimes while in office. Therefore he did not want it done until his reign was over and another was on his throne. Then he must put out the tracks, and procure Martin and Porter to cover his crime by robbing the county of the evidences of it, and gave them the key to enter and rob. He sacrificed his nephew to shield his iniquity.

So Dooley, the constable who arrested Porter, swore that "last March"—that is, the March before the trial, he was constable and arrested Porter then, and Porter talked to him about this larceny, and he said Ben did it, and it was strange a man would do a thing himself and then try to put it off on others. The fact of the presentment and arrest in March, 1885, throws some slight light on the time, as probably being shortly before, when the larceny occurred. But the evidence of Hill is sufficient of itself to support the finding of the jury, and to show that the verdict is sustained by evidence, and therefore not against law. In addition to this, Mr. Reynolds swears that he went out of office, as treasurer, the 22d of January, 1885,—as that was the present year when he was testifying, may be inferred; and he swears that at the time of the larceny he had not turned over his deposit of funds to his successor. If not, of course it must have occurred very recently—one would infer strongly since his successor had been elected, but before he had turned over these deposits in this safe, which was robbed of many of its effects. We think these circumstances are sufficient to support the verdict.

That the crime was committed is certain, if the accomplice told the truth. The conviction being for a misdemeanor, his being an accomplice goes only to his credit, and the jury had a right to believe him, and it is for them to find the value of what was that night stolen, and convict for misdemeanor, if under fifty dollars.

Judgment affirmed.